Case number 13-5254. Paul Deppenbrook on behalf of all RIT Beaver Falls employees 9305-04 appellant. Ron Gossard on behalf of all RIT Beaver Falls employees 9305-04 at L versus Pension Benefit Guarantee Corporation. Mr. Deppenbrook for the appellant, Mr. Rayl for the appellee PBGC. Mr. Deppenbrook, good morning. Before we start, Madam Clerk, can you see if we can turn the heat up in here? It seems awfully cold. Thank you. Go ahead. Good morning. And if it pleases the court, my name is Paul Deppenbrook. I come to this court on behalf of myself because I am the appellant and also those similarly situated from the RTI Beaver Falls plan. I come before you seeking redress and our assertions to entitlement to full unreduced early retirement benefits. This is the first issue before the court today. PBGC is entitled to pay early unreduced retirement benefits to the plan participants from Beaver Falls under Section 29 U.S.C. 1301 A.A. Under 1301 A.A., which encompasses a definition that PBGC uses when interpreting non-forfeitable benefits. And if I might issue to the court, can I approach the bench? Submit them to the clerk, if you would, and a copy to your opposing counsel. For the purpose of this argument, the terms in determining a non-forfeitable benefit, as PBGC's Chevron deference in their interpretation, means with respect to a plan of benefit for which a participant is satisfied, the conditions of entitlement for under the plan or the requirements of this chapter, specifically, other than, parenthetical, submission of a formal application, retirement, or in this case, completion of a required waiting period, and more importantly, or death. For the court to understand, the parenthetical other than offers another exception to a substantive break in continuous service which is at hand. The only condition that the plan participants did not meet was that break in continuous service. Under Section 3.0T2D of the plan, termination due to permanent closure in accordance with the Basic Agreement, pulls that required waiting period through Article 34 of the Basic Agreement. Article 34 of the Basic Agreement, which can be found at page 277 of the appendix and in the administrative record, clearly denotes an exception of a break due to permanent closure. Congress established the WARN Act, 29 U.S.C. 2101-2109. Under the WARN Act, Section 2105, the requirements to run, and that requirement under 2105 is a pure exception that can affect other laws and other statutes. The contractual period under Article 34 of 90 days of the Basic Agreement was required to run concurrently. Mr. Dickmer, can I ask you, do you have, as I understand it, you're making an argument that WARN Act notice triggers eligibility of the shutdown benefits, is that right? In completion with 302D and Article 34, yes. Do you have any authority, has any court anywhere agreed with that? There's been no case laws. We've advised PBGC in their internal appeal process, this was a precedent-setting case potential, and that the full board of the appellate board from the PBGC should have heard this prior to coming to the district court or prior to coming to this court. Under 302D, it's clearly... But you were still working, right? Under a... When the lights are on and things are happening, you were still working there when the plan, the day the plan was terminated, right? You went to work at the plant. Yes, yes. And you worked at the plant for how long after that? Within the, with WARN the required waiting period up to August 17th, which was in... Was that a month or two months after the plan was terminated? Approximately six weeks, Your Honor. Okay, okay. In retrospect... And I understand that you're saying there's a legal argument that suggests that you should still get shutdown benefits, but just as a factual matter, you were going to work and working at the plant for six weeks after the plan was terminated? Yes, but... And now, and so my question is, are you aware of any legal authority that says on that combination of facts you're entitled to shutdown benefits? Only legal authority would be PBGC's deference expressed in the FETI case, Your Honor. In the FETI case, which the plan, those plan participants worked a year after the plan was terminated. It was a post-petition termination. Unlike the RTI case, which is a pre-termination condition. The pre-termination condition under WARN started on May 1st. That was a pre-termination condition. In other words, the plan participants from Beaver Falls were clearly six weeks into that required waiting period prior to PBGC notifying under 1342C of their requirements of notification. And by the way, under 2105, that period of notification, we argue today, that that period also should run concurrently due to the WARN requirement under 2105. The posture this case is in right now, we're reviewing the decision of the board, right? I'm sorry? We're reviewing the decision of the PBGC, right? Yes. And you have argued, I think, correct me if I'm wrong, that we should not grant the typical deference we do because the PBGC was in an unusual position here of being both the guarantor and trustee. And also due to bad faith and improper behavior. Okay. Once again, can you cite me to any legal authority that agrees with that argument, that there's an inherent conflict in what the PBGC is doing? In the Chevron case itself, Your Honor, the Chevron case specifically states if their bad behavior is due to not disclosing their legal position to the plan participants or other information, that that deference should be withheld. Okay, so that's the bad behavior side of it. Let's get to that. Let's put that to one side. What about the argument that there's an inherent conflict when PBGC is acting as both guarantor and trustee, that that inherent conflict keeps us from giving it Chevron deference? That would be Wilmington Shipping. Okay. Wilmington Shipping clearly denotes that PBGC wears two hats. And as they wear two hats, one is trustee and one is guarantor. But does that mean, yeah, they wear two hats, but does that mean that we don't give them deference? Because I was unable to find any cases where we didn't give PBGC that deference. Sarah Lee would be one. Sarah Lee, in the particular case where there was a conflict of interest in bad behavior, that deference is withheld. And more particularly, Your Honor— Well, that was a bad behavior case, though, right? But in circumstances of warrant and in the unique framework of that Chevron deference, PBGC gets no— And what reminded the bad behavior here? Well, the bad behavior, Your Honor, is they entered into an agreement that was not disclosed to the plan participants and literally changed the terms of the plan and the intent and the purpose of the plan. They forced an offer— So would we have to—to follow your argument on deference, would we have to agree with you that there was bad behavior? If we didn't think there was bad behavior, let's imagine we didn't side with you on the bad behavior, would we still give them deference under Chevron or no because of the inherent conflict? No, due to the WARN Act. They receive no deference when it comes to another agency's statutory interpretation, which under this, it's totally up to the court to determine under this early retirement statute as to whether WARN 2105 and the requirements to run those time periods concurrently— PBGC receives no deference, Your Honor. That is not their statutory scheme. Their statutory scheme is solely based on their statutes. And in this particular case, WARN, the WARN time period that was instituted by Congress, is a clear required waiting period of substantial importance, not of a procedural manner, as PBGC cited in FETI. And also, as the judge cited in FETI, is that PBGC would be perverse. It would be perverse to allow PBGC to enter into post-petition agreements with the employer, as they did in this case. They entered into a post-petition agreement, denied that petition, withheld statutory reliance in their appeal answer, which prevented a reasonable administrative record. They skewed the administrative record to their favor. Do you read the WARN Act, the period that you're referring to in the statute concerning the WARN Act, do you read that to be a period of waiting for employees or a period of waiting for the company? The WARN Act, coupled with Section 3.02d of the plan, which is termination, if and when termination occurs in accordance with the basic agreement, and Article 34 of the basic agreement is the attempt by the company and the union and the collective bargaining process to alter the effects of WARN so that it would come under the plan. So, yes, WARN, coupled with Article 34 and Section 3.02d of the plan, requires PBGC to disregard that substantial waiting period enacted by Congress. It is not procedural. As in the paper that I put before you, PBGC argued in FETI that those parenthetical situations are procedural. There's nothing procedural about that. When a plan participant or an employee dies, that is not procedural. It causes a problem for the plan participant himself that he's dead. It causes a problem that the plan participant now no longer is an employee and the company has to replace that employee that might be of a very significant importance. So PBGC's contention in FETI that that's somehow, that these parenthetical issues are somehow not substantial. In this particular case, Congress clearly, clearly created a required waiting period that interfered, that interfered with the plan or the plan itself and the employer's ability to close that plan instantly. Because of that, because of that, that becomes a substantial period that PBGC must recognize. Plus, in this particular case, unlike FETI, it occurred a year after termination. This time period, this required waiting period is pre-termination. It occurred on May 1st. PBGC did not move to terminate the plan until June. And that is also a notification period that we believe under 2105 must run concurrently, hence taking their termination date, which we're not arguing the court's appropriate term of June 12th, but we're saying under the Warren Act and the requirement of that one exception that can affect other laws and other contracts, clearly that period had to run concurrently with the 90-day period under Article 34. So from May 1st to August 17th, though it exceeds 90 days, it's well briefed why that is. The point is that it's a pre-termination. It's a pre-termination condition and a required waiting period that must be taken into consideration. All right. Your time's up. We'll give you a minute in response. I thank you for the court's time. Mr. Rayl. Good morning. Nathaniel Rayl on behalf of Appellee Pension Benefit Guarantee Corporation. May it please the court. I'd just like to emphasize some of the salient points of our brief, which we believe adequately address the appellant's arguments in this case as well as the arguments advanced here today. First of all, we are entitled to a deferential standard of review. Second, appellant shutdown benefits are not guaranteed under Title IV of ERISA. And third, we calculated the benefits. Let's go back to deference. Why should you be entitled to deference? Isn't there an inherent conflict in your roles as guarantor and trustee? Well, no, Your Honor, there's not. We stand on somewhat different footing from a private trustee in that respect because we were specifically created by Congress to administer Title IV of ERISA. But that doesn't eliminate competing incentives, right? I mean, we have an incentive to save money for the government, right? Your incentive isn't entirely to be a fiduciary with respect to the employees. But it is one of our express purposes under Title IV to preserve the fund, the PBDC's fund. It's not saving money in a sinister way, but rather saving money in a fiscally responsible way as authorized by the statute. Yeah, but it sets you at – I mean, there's a tension between your duty to the government and your duty to the employees. I'm not suggesting anything sinister about that, but I'm wondering if under that circumstance, if that means that maybe the typical deference that we give to a government agency would not be appropriate here. No, I think not. I think Congress considered that when it created PBDC and authorized us to do what we do. There is a natural tension there for private trustees, but I think the overarching concern is to administer the defined benefit pension program under Title IV. We have, since our creation 40 years ago, administered guaranteed benefits for thousands of plans and literally millions of participants and are the experts in that area. We are the federal agency with that area of expertise, and we would submit that we're entitled to deference under the Administrative Procedure Act and that our decisions in our area of expertise should only be overturned if found to be arbitrary and capricious. Two years ago, a similar argument was made regarding deference. It should not be accorded us, and that was not accepted by this Court. That was the USW versus PBDC case, the one that dealt with the Thunderbird mining pension plan, and there it was held that we are entitled to deference notwithstanding this dual role, which was, in fact, emphasized by the Appellants' Enactment case. Having said all that, we would submit that we should win this case under any standard. That was for factual determinations, right? I beg your pardon? That case was an applied substantial evidence review to a factual determination? Yes, there was some dispute. I would have called that a legal determination because it was up on summary judgment. I thought the Court assumed that it was a factual determination. Certainly the questions and argument pointed in that direction, and the Appellant tried to make that a factual issue, but I believe the issue was whether the agency could conclude on the basis of those facts whether a permanent shutdown had taken place, and that would be a legal question. As I would say, I believe we should win this case under any standard because this is not a case that presents questions of complex actuarial science or novel interpretations of the regulation. Rather, Appellants simply did not meet the conditions required under the pension plan to be entitled to the benefit that he seeks prior to the plan termination. As I believe was just discussed a moment ago, Appellant met those conditions two months after the pension plan terminated, in August 16th, I believe, of 2002. Can I ask you about the second part of the case, which is about the defined benefit plan individual accounts, and that's exactly how those terms interrelate with respect to the complexities of this particular pension plan? Yes, Your Honor. What is the instrument to which you're asserting that we would give deference? What is the agency pronouncement to which we would accord deference? Well, I believe what's being appealed here is the actual benefit determination that PBGC rendered in respect of the Appellant. He appealed that determination on several grounds, including that we should have taken greater cognizance of the defined contribution plan, perhaps even had taken it over upon plan termination. We felt that we were not authorized under Title IV of ERISA to do so. The statute is fairly clear that we do not ensure defined benefit plans to the extent that they are defined contribution plans as well. And in this case, does deal with a plan that is a hybrid, that has a defined contribution piece. And what did that determination say? Because it didn't seem like there was much in the determination other than an invocation of the statutory language, the 35B provision that you relied on. So what are we deferring to? Well, we're deferring to the agency's expertise in calculating the benefit correctly. What we calculated in accordance with the plan, which I think was the standard formula, $35 per month for each year of service, offset by the amount of the defined contribution plan. We had to separately get data from RTI about what that defined contribution plan was all about. But it seems like the question here is whether that statutory provision applies in this context. So nobody disagrees with what the statutory provision says. It's the words are the words. And so we look at the words and we try to understand what they mean. And everybody agrees that the question is whether that statutory provision applies to this context. And as to that, as to the reasons why you conclude that that statutory provision applies to this context, it just didn't seem like there was much in the determination other than a conclusion by PBGC, which may be correct. But in terms of what we would defer to, there's a conclusion that that statutory language applies here, but without much of an explanation as to why that would be the case. I think it's not in dispute in this case that a piece of the defined benefit plan was an individual account. And we determined that we cannot insure, take possession of the assets, or otherwise deal with that individual account other than to subtract its amount from the defined benefit portion. There may be nothing more to the determination than that. And if that's so, then that is the determination for which we seek deference. Still, I think that deference may not be necessary in this case to find that a felon simply did not meet the conditions set forth in the plan to be entitled to this benefit. So can I ask you on that? So suppose we just take deference out of the field of vision just for argument's sake. That's right. Is your understanding of the way these plans work as a matter of description that there's only two types of plans? There are defined benefit plans, and then there are individual account plans. And that's it. There's no other category that exists. Is that PBGC's understanding of the landscape? Only for purposes of this case, Your Honor. Okay. There may be lots of different benefit plans, welfare plans, medical plans. I see. Okay. Title I of ERISA might apply. But Title IV of ERISA, which we administer, deals mainly and, in certain respects, almost exclusively with defined benefit plans. And if it's not a defined benefit plan, then it's an individual account plan? For these purposes, I take your point that there may be all kinds of stuff outside the purview of this case that none of us know about. But for these purposes, if it's not a defined benefit plan, then it's an individual account plan? Yes, Your Honor. That's it. That's the universe. Okay. I believe I've sufficiently stressed my point that appellant did not satisfy the requirements for obtaining this benefit. And I see that I'm almost out of time. Shall I wrap up? Yeah, please do, if there are no more questions. Okay. In respect of calculating the benefit, we would simply assert that we did it correctly, that ERISA speaks to these hybrid sort of plans and directs us not to take possession of the defined contribution asset and deal only with a defined benefit plan, which we did in this case. This does not constitute an improper plan amendment. Rather, it constitutes administering the plan and taking it over and terminating it and dealing with it in accordance with the limitations of the statute. All right. Thank you. If there are no further questions. Thank you. Thank you for the opportunity. Yes, Mr. Chairman. Okay. Okay. In retrospect to the PBGC's assertion that they're experts, would an expert hold an agreement, post-termination agreement that changes the terms of the plan, would they hold that agreement for over eight years and wait until the administrative record was filed with the district court? Would they do that to a plan participant? Would an expert do that? Would an expert hold their statutory reliance during their internal appeal process? Would an expert do that? Totally wash all references to their statutory reference so the plan participants could not rebut that, as in Bowman Transportation states succinctly that they must give that in order to be rebutted, so that the plan participants can rebut that. That's an act of bad faith and improper behavior. Simply denying that to the plaintiffs at this point is ludicrous. It's unreasonable. As 1321C1, it's a monthly benefit. In reference to your question, Your Honor, okay, there are two types of plans, a defined benefit plan and a defined contribution plan. Sometimes referred to the defined benefit plan, the defined contribution plan may be referred to as an individual complaint. 1321C1 specifically states it's unambiguous. They receive no deference. They fail that under Chevron, the two tests. They fail it under unreasonableness and they fail it under ambiguous. It is not ambiguous. It's a definition, as I've clearly argued in my pleadings. So in this particular case, 1321C1 simply states the term in B1 cannot be used and applied to a plan in which a promise of a fixed benefit by the employer. My colleague admitted $35 times the number of years of service. That's a fixed benefit. Their desire to impress upon this Court a section 414X plan instead of the 414K plan that Congress intended, they changed the terms of the plan. They used the terms from a 414X in the agreement of bad faith that they withheld for eight years, which they want to split the plan into two pieces. It's not. That plan is one defined benefit plan, as RTI executives in that agreement stated. They disagree with their B12-1 argument, as we do. B12-1 leads you through 35B of Section 102 of ERISA. It leads you to a plan that expresses its benefit in an annual form versus a monthly form. If you look at B12, there's an exception at the end of B12 that says or and leads you to 13, which describes a professional employee. Professional employees, architects, lawyers, accountants, actuaries express their benefit, express their benefit in the terms of an annual benefit versus a monthly benefit, which is the promise by the employer of a benefit, a monthly benefit, as in the RTI case, for the plan participants. All right, Mr. Deffenworth, we have your argument. Thank you. We're over your time. I appreciate the Court's time, and thank you very much.
judges: Henderson, Griffith, Srinivasan